UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES RIVER INSURANCE CO.,

        Plaintiff,

v.

                                                  Case Number: 07-14971

BOYDELL DEVELOPMENT, INC. and HARMONIE    Honorable Julian Abele Cook, Jr.
PLAZA, INC.,

        Defendants,

ORDER

On November 21, 2007, the Plaintiff, James River Insurance Company, a Virginia-based company, filed a complaint for declaratory relief against the Defendants, Boydell Development, Inc. ("Boydell") and Harmonie Plaza, Inc. ("Harmonie"), both of which are Michigan corporations.[1] Here, the Plaintiff seeks to obtain a declaratory judgment which, if granted, would determine that (1) there is no liability coverage under the parties' insurance policy, and (2) it does not have any contractual duty to defend or indemnify either Defendant against the claims by an aggrieved person in a state court litigation; to wit, *Jason R. Henisee v. Temple Plaza, Inc. et al*, Wayne County Circuit Court, Case No. 06-616929.[2]  On February 26, 2008, the two Defendants

---

[1] Boydell is a company which manages rental and other properties within the Detroit area, including property that is owned by Harmonie.

[2] Although it was not initially clear from the record that the amount in controversy in this case exceeds the statutory requisite $75,000.00 figure, the Court - prior to the commencement of the oral arguments by the parties in support of their respective motions for summary judgment -

filed a counterclaim in which they jointly challenged the relief that the Plaintiff seeks to obtain in this federal lawsuit. Following the passage of nearly ten months, the Plaintiff filed a motion for the entry of a summary judgment on December 20, 2008. Shortly after the first of the new year, Boydell and Harmonie collectively filed a similar dispositive motion on January 8, 2009.[3]

I.

The dispute between these parties stems from an injury in 2006[4] to the customer of a bar, "Coaches Corner," at 230 Grand River that had been rented to Temple Plaza, Inc. by Harmonie.[5] The customer, Jason R. Henisee, claimed that the shattering of a plate glass window in the bar facility caused him to sustain severe injuries. Henisee also alleged that he was assaulted and beaten thereafter by three off-duty Detroit Police Officers, all of whom had been employed by the bar as bouncers. A lawsuit in the Wayne County Circuit Court of Michigan ensued.

In his complaint, Henisee claimed that Harmonie, as the owner of the property, bore the ultimate responsibility for his injuries. The Defendants, relying upon the terms of their insurance

---

resolved the issue and, in so doing, concluded that it does have jurisdiction to address and resolve this dispute. In essence, this Court determines that it has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. Therefore, James River's motion of March 25th, in which it asked the Court to exercise its jurisdiction over this litigation, is granted. (Docket #30).

[3]Neither Defendant responded to the Plaintiff's motion for summary judgment.

[4]It should be noted that, although there is a discrepancy in the record regarding the date of the incident, it is not relevant to the outcome of these motions. The Plaintiff states that the incident occurred "on or about June 16, 2006." However, the Defendants assert that Henisee's injury occurred in January 2006. Significantly, neither party disputes that the incident occurred during the time period which is covered by the insurance policy.

[5]"Coaches Corner," which maintained its business enterprise pursuant to its lease with Harmonie, was identified on the policy as a location that Boydell owned, rented, or occupied.

contract, transmitted the claim to the Plaintiff for its attention and appropriate coverage. However, the Plaintiff, after assessing Henisee's claim, concluded that neither Harmonie nor its tenant, Temple Plaza, Inc, were covered as insured entities under its policy with Boydell. On the basis of this administrative determination, the Plaintiff "declined to provide a defense and indemnity." Nevertheless, Henisee's case continued through discovery and was eventually settled for $65,000 with an allocation of damages as follows: "Coaches Corner" (tenant) agreed to pay $50,000, along with an obligation by Harmonie (owner) to pay the balance; namely, $15,000.

The Plaintiff, continuing to believe that its initial determination of no liability was a correct assessment, filed this declaratory judgment action in which it contends that it did not - and does not - owe any duty to defend and/or indemnify Harmonie with respect to Henisee's injuries. In their counterclaim, Harmonie and Boydell jointly submit that the premises ("Coaches Corner") was covered by their insurance policy, pointing to the "etal" [*sic*], as listed on the policy in the entry of the named insured ("Boydell Development Inc etal" [*sic*]), refers to all of the owners of the listed properties.

It is the position of the Plaintiff in this case that it has no contractual obligation to insulate Harmonie from liability for any claims arising out of the Henisee case. Further, the Plaintiff submits that Harmonie (1) is not a "named" insured, and (2) was not identified in the schedule of properties within the parties' insurance contract. Moreover, the Plaintiff posits that, although other legal entities were added as additional insureds by endorsement, no such measure was ever undertaken for Harmonie.

The Defendants disagree, arguing that "the phrase 'et al' which appears on the declarations page can only refer to the owners of the scheduled loations [*sic*] on the policy of insurance" and,

3

therefore, James River is liable for claims arising out of the Henisee case.

II.

This case requires the attention of the Court to define the meaning of the following entry on the first page of the parties' insurance policy:

1. NAMED INSURED AND MAILING ADDRESS:

Boydell Development Inc etal [*sic*]
743 Beaubien
Detroit, MI 48226

During the early months of 2005, Boydell contacted the Mourer-Foster Agency in Lansing, Michigan ("Mourer-Foster") for the purpose of modifying its insurance coverage. Acting upon this request, Mourer-Foster transmitted an application for commercial insurance to Boydell on April 26, 2005. In its letter of transmittal, Mourer-Foster provided Boydell with a series of proposals, the first of which covered thirty locations at a cost of $90,000. However, in an effort to reduce the attendant insurance costs, the list of properties to be covered was reduced to fifteen. Thereafter, the Plaintiff issued an insurance policy to Boydell which covered a period from August 11, 2005 to August 11, 2006. Although these fifteen properties are listed on page two of the insurance policy, there is nothing within the contract which identifies their ownership. Notwithstanding, the Defendants insist that Harmonie was the owner of one of the locations (to wit, 230 Grand River, Detroit, Michigan) that is listed on the contract, and, as such, should be treated as an insured entity under the parties' insurance contract.

Turning to the subject insurance policy, it defines "insured" in the following manner:

SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

      a. An individual,
      b. A partnership,
      c. A limited liability company, you are an insured. Your members are also insured, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.
      d. An organization other than a partnership, joint venture or limited liability company you are insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders . . . .

      No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

The insurance policy also provided that the Plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Even though the identities of some of the insured properties were modified to the insurance contract during the course of the policy period by endorsements, none of the modifications specifically included Harmonie.

### III.

Pursuant to Fed. R. Civ. P. 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party must demonstrate the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This can be done by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the moving party satisfies its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue

for trial." *Matsushita Elect. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When attempting to resolve a motion for summary judgment, the Court must view the evidence and draw "all justifiable inferences" in favor of the non-moving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). If the nonmoving party presents evidence that is "merely colorable" or "not significantly probative," a summary judgment may be entered against it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). When determining the materiality of an issue, the substantive law - without regard to evidentiary requirements - governs "which facts are critical and which are irrelevant." *Id.* at 248.

In 2005, the Michigan Court of Appeals declared that "[a]n insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. [I]nsurance polices are subject to the same contract construction principles that apply to any other species of contract. The primary goal in the construction or interpretation of a contract is to honor the intent of the parties. [T]he language of the parties' contract is the best way to determine what the parties intended." *Royal Prop. Group, LLC v. Prime Ins. Syndicate, Inc*., 267 Mich. App. 708. (2005)(internal citations omitted).

When the language of a contract is clear and unambiguous, its interpretation is limited to the actual written words of the contract. *Universal Underwriters Ins. Co. v. Kneeland*, 464 Mich. 491, 496 (2001). Only when the contract language is susceptible to two or more reasonable interpretations is its interpretation become a question of a fact. *D'Avanzo v. Wise & Marsac PC,* 223 Mich. App. 314, 319 (1997). Ultimately, the determination of whether contractual language is ambiguous becomes a question of law. *Brucker v. McKinlay Transport, Inc.*, 225 Mich. App.

442, 447-448 (1997) (on remand).

IV.

Here, the Plaintiff maintains that Harmonie is not an insured under the terms of its insurance contract with Boydell. It contends that the "etal [*sic*]" on the first page of the policy refers only to Boydell Development, Inc. and Boydell Builders, LLC, both of which were identified on the application for insurance. Thus, in its view, "Boydell Development Inc etal [*sic*]" refers to both of these companies. Moreover, the Plaintiff submits that it has no obligation to provide coverage to third parties and, hence, there is no reason to specify the condition under which it would not provide coverage. *Century Surety Co. v. Charron*, 230 Mich. App. 79, 86 (1998).

On the other hand, the two Defendants submit that the phrase "etal [*sic*]," as it applies to this controversy can only refer to the owners of the identified locations on the insurance policy. As support, they point to a spreadsheet that was submitted to the Plaintiff, along with its initial application for insurance which identifies the property addresses and the names of the owners for coverage.

Both of these competing interpretations of the insurance contract are plausible. The Plaintiff's contention that Harmonie is not specifically listed on the contract is a correct assertion. However, the phrase "etal." [*sic*], especially when it is viewed in a light that is most favorable to the Defendants, could arguably refer to the owners of the listed buildings.[6] A finder of fact could likewise determine that the Plaintiff's interpretation is more reasonable – that "etal [*sic*]" merely refers to Boydell Development, Inc. and Boydell Builders, LLC.

---

[6]There is an exhibit which indicates that Harmonie was listed among the quotes that were provided to Boydell by Mourer- Foster.

According to the seventh edition of Black's Law Dictionary, the Latin phrase, "et al." is defined as "[a]nd other persons." Both parties have alleged a plausible interpretation of the words, "Boydell Development Inc etal." This phraseology, and , ultimately, the contract, is ambiguous. Inasmuch as this contract is "susceptible to two or more reasonable interpretations," the Court determines that there exists a genuine issue of a material fact for resolution.. *D'Avanzo,* 223 Mich. App. at 319 (1997)

V.

For the reasons that have been stated above, the Court denies the parties' motions for summary judgment.

IT IS SO ORDERED.

Dated:  August 13, 2009            S/Julian Abele Cook, Jr.
    Detroit, Michigan          JULIAN ABELE COOK, JR.
         United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 13, 2009.

         s/ Kay Doaks
         Case Manager